KRALJER v. SNARE & TRIEST CO. et al.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 155.

1. BRIDGES ⬅46—TORTS—DEFECTIVE BRIDGE—RES IPSA LOQUITUR.

On a libel for injuries to a deck hand on a tugboat, caused by a rivet falling from a bridge as the tug passed under it, where it appeared that the city's employés had been removing old rivets and replacing them with new ones, the doctrine of res ipsa loquitur applies, so that the burden of explaining the cause of the accident rested with the city, although the burden of proof still remained with the libelant.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 108, 110–122; Dec. Dig. ⬅46.]

2. MUNICIPAL CORPORATIONS ⬅753—TORTS—DEFECTIVE BRIDGE—RES IPSA LOQUITUR.

Evidence that the city had adopted ample precautions to avoid such accidents, but that its employés frequently departed from the system in such a manner as to render the falling of rivets probable, is not a sufficient explanation to relieve the city from liability.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1584, 1586; Dec. Dig. ⬅753.]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by John Kraljer, by Peter Kraljer, his guardian ad litem, against the Snare & Triest Company and others. Decree for the libelant, and respondent City of New York appeals. Affirmed.

Frank L. Polk, Corp. Counsel, of New York City (Terence Farley and E. Crosby Kindleberger, both of New York City, of counsel), for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (Herbert Barry and James K. Symmers, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. July 15, 1913, at about 12:30 p. m., the libelant, a deck hand on the tug G. M. Sorrell, was struck by an old rivet coming from the Williamsburg Bridge, across the East River, as the tug passed under it. No one on the bridge saw the rivet fall, or knew of any rivet likely to fall. The city had been engaged the day before in driving out old rivets from the top chord, and on the day of the accident in driving new rivets in their places. It was the lunch hour at the time the libelant was injured, and no work was going on.

A scaffold, composed of loose boards, was erected on each side of the chord, with upright boards on the outside edges to prevent rivets or tools from rolling off, and the scaffolds were covered by canvas, to prevent rivets or tools from dropping down between the boards. Besides this, a bag was provided to catch the old rivets as they were driven out. After that they were put in a pail, which was from time to time lowered down to the foot walk below and carried from that point to a box some

distance away, in which they were deposited. The system outlined was properly held by Judge Learned Hand to be admirable. It, however, shows that accidents caused by falling rivets were to be apprehended, and the proofs show that rivets were not always put in the bag or pail, but were often laid by the workmen upon different parts of the structure, to be afterwards removed to the box, and were not always cleaned up at the end of the day. Rivets so placed might have been shaken off by the vibration of the bridge.

[1, 2] We think the doctrine of res ipsa loquitur applies to this situation. It does not relieve the libelant of the burden of proof, but does put the burden of evidence—that is, of explanation—on the respondent. Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905. The explanation the city made would have been sufficient, but for the fact that it disclosed frequent departures from the system which might cause just such an accident as happened. The award seems to us large, but the duty of fixing the damages rested upon the primary court, and we do not think the award to be so excessive as to justify us in disturbing its conclusion.

Decree affirmed.